# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | )   **Case No. 1:18-cr-36** |
| **v.** | ) |
| | )   **Case No. 1:21-cv-125** |
| | ) |
| **JESSE PORTER** | ) |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Defendant Jesse Porter ("Porter") entered a guilty plea in this Court to two counts of sexual exploitation of a minor in violation of 18 U.S.C. §§2251(a) and (e), for which he is now serving concurrent terms of 276 months' imprisonment. Pending before the Court are Porter's motion to set aside his conviction and/or sentence under 28 U.S.C. §2255, as well as his motion to proceed *in forma pauperis* and his motion for appointment of counsel. For the reasons that follow, these motions will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

The underlying criminal proceeding arose out of an investigation conducted by the Royal Canadian Mounted Police ("RCMP") into matters concerning child exploitation. In October of

---

[1] The evidence that gave rise to the underlying federal criminal charges was summarized by the prosecuting attorney during the Court's change-of-plea colloquy, which occurred on July 17, 2019. *See* ECF No. 72 (transcript) at 25:15-31:9. After hearing the Government's summary in open Court, Porter, while under oath, accepted the Government's recitation of the evidence as accurate and admitted his guilt based on the facts proffered by the Government. *Id.* at 31:10-33:4. The Court's recitation of relevant facts is derived from the Government's summary of its evidence.

1

2018, the Canadian attaché to Homeland Security Investigations ("HSI") received information from the RCMP that a user of the Kik Messenger app located in Ridgway, Pennsylvania was sharing child pornography.  Of particular concern was evidence suggesting that the Kik user in Ridgway (identified by the username "usemywife814pa") had produced child pornography and then shared it on the app.  Relevantly, one image depicted an adult male's exposed penis in very close proximity to the back of a very young girl's head.  A subpoena was served on the Internet service provider for the targeted Kik user, revealing Porter as the subscriber.

HSI agents subsequently executed a federal search warrant at Porter's house, at which time his wife identified Porter as the man in the image with his penis exposed next to the young child's head.  Porter's wife recognized the couple's home as the setting where the image had been taken and further identified the child in the image ("Child Victim 1") as a three-year-old girl whom she regularly babysat.

Porter was interviewed at his workplace and admitted that the Kik username "usemywife814pa" belonged to him.  During a subsequent interview, he admitted to sharing child pornography on Kik and specifically acknowledged being the adult male with the exposed penis in the previously described image.

Meanwhile, Porter's phone and computers had been seized pursuant to agents' execution of the federal search warrant.  Forensic examination of the computers ultimately revealed the presence of numerous items of child pornography, including the previously described image involving Child Victim 1.

Separately, the RCMP had executed their own production order to Kik, which uncovered additional child pornography videos and images produced by Porter.  One such video depicted Porter placing peanut butter on his exposed penis and then inducing the young child, while

partially blindfolded, to have oral contact with his penis.  Another video depicted Porter masturbating his exposed penis while Child Victim 1 stood a few feet away watching cartoons.

Investigators also accessed from Porter's Kik account two surreptitious recordings of a 15-year-old female ("Child Victim 2") that were made in Porter's house.  The videos of Child Victim 2 focused on her exposed genital area as she prepared to use the shower in Porter's bathroom.  Also recovered were numerous photographic images of the same female, apparently taken in surreptitious fashion, which focused on the girl's genital area while she was clothed.

Significantly, Porter's activities came to the attention of the RCMP when another Kik user's account was found to contain images from Porter's account, including images of Child Victim 1 and Child Victim 2.  Thus, the forensic evidence suggested that Porter had shared the images of child pornography that he had produced.

Based on these facts, Porter was criminally charged in a complaint filed on November 8, 2018, and subsequently indicted.  ECF Nos. 1, 6.  In a superseding indictment filed on December, 11, 2018, Porter was charged with six counts of sexual exploitation of a minor in violation of 18 U.S.C. §§2251(a) and (e) (Counts 1 through 6), and one count each of distributing and receiving material depicting the sexual exploitation of a minor in violation of 18 U.S.C. §§2252(a)(2) and (b)(1) (Counts 7 and 8, respectively).  ECF No. 24.  Throughout his criminal proceedings, Porter was represented by Phillip Friedman, Esq.

Porter eventually entered into a plea deal with the Government, pursuant to which he pled guilty to two charges of sexual exploitation of a minor at Counts 1 and 5 of the Superseding Indictment and acknowledged his responsibility for the conduct charged in the remaining counts, which the Government dismissed.  *See* ECF Nos, 49, 49-1, and 50.  As part of his plea agreement, Porter waived any right to appeal his conviction and sentence except to the extent:

3

(1) the Government appealed his sentence; (2) the Court's sentence exceeded the applicable statutory maximums; and/or (3) the Court's sentence unreasonably exceeded the applicable sentencing guidelines range. ECF No. 49-1, ¶12; ECF No. 72 at 19. Porter also waived his right to file a motion for relief under 28 U.S.C. §2255 or otherwise collaterally attack his conviction or sentence, although he specifically retained the right to assert an ineffective-assistance-of-counsel claim in an "appropriate" forum. ECF No. 49-1, ¶12; ECF No. 72 at 20.

Porter was sentenced on November 6, 2019, and the Court entered its judgment on the docket the following day. ECF Nos. 63, 65. Although Porter was facing a statutory maximum period of incarceration of up to thirty years on each count,[2] the Court sentenced him to concurrent terms of 276 months (or 23 years) of confinement, with credit for time served.

Notwithstanding the terms of his plea deal, Porter filed a *pro se* notice of appeal from his conviction and sentence on November 25, 2019. *See* ECF No. 66. The United States Court of Appeals for the Third Circuit subsequently appointed Mr. Friedman to be Porter's appellate lawyer. *See United States v. Porter*, No. 19-3737 (3d Cir.), ECF No. 9. Thereafter, the Government filed a motion to stay the Court's briefing schedule and enforce Porter's waiver of appellate rights. *Id.* at ECF No. 15. Mr. Friedman then filed a motion to withdraw as Porter's counsel, citing the lack of any non-frivolous issues for appeal. *See id.* at ECF No. 19. On May 1, 2020, the Court of Appeals entered an order of judgment granting the Government's motion to enforce the appellate waiver, granting Mr. Friedman's request to withdraw as counsel, and denying as moot Porter's *pro se* request for new counsel. *Id.* at ECF No. 24. Porter filed a *pro*

---

[2] *See* 18 U.S.C. §2251(e), USSG §5G1.1(a).

*se* motion for reconsideration, which the Court of Appeals denied on June 5, 2020.  *Id.* at ECF No. 27.

## II.    CURRENT PROCEEDINGS

On April 23, 2021, Porter filed the instant motion for relief under 28 U.S.C. §2255, along with a motion for appointment of counsel and a motion for leave to proceed *in forma pauperis*.[3] *See* ECF Nos. 76, 77, 78.  The Court issued a *Miller* notice[4] on June 2, 2021 and directed Porter to file a "Statement of Intent" by July 2, 2021 indicating whether he was opting to have the instant §2255 motion ruled upon as filed or was opting instead to withdraw his motion for the purpose of filing an all-inclusive § 2255 motion subject to the time limits statutorily prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §2244.  *See* ECF No. 82.  Porter was advised that, if he chose the latter option, the statutory period for filing an "all-inclusive §2255 petition" would be tolled an additional 120 days from the filing of his "Statement of Intent."  *Id.*  Porter was further advised that, if he did not file his Statement of Intent by July 2, 2021, the Court would "proceed to determin[e] . . . his motion as a section 2255 motion, with the attendant consequences under AEDPA."  *Id.* at 2.

Porter did not file a Statement of Intent as directed.  Accordingly, the Court will analyze his pending §2255 motion as it presently stands based on the grounds he has asserted.  To that end, the Court notes that Porter's motion sets forth two bases for relief.  First, Porter asserts that

---

[3] As the Government observes, Porter's §2255 motion appears to be timely under the provisions of 28 U.S.C. 2255(f)(1)-(4).  His time for seeking a writ of *certiorari* from the United States Supreme Court expired no earlier than July 30, 2020, *see* Sup. Ct. R. 13, and Porter had a one-year period thereafter (or until July 30, 2021) within which to file a motion for relief under 28 U.S.C. §2255.  *See* 28 U.S.C. §2255(f)(1).  As noted, Porter filed the instant §2255 motion on April 23, 2021.

[4] *See United States v. Miller*, 197 F.3d 644 (3d Cir. 1999).

his attorney was ineffective in connection with the change of plea, sentencing, and appellate proceedings.  Second, Porter alleges prosecutorial misconduct in connection with his sentencing.

The Government filed its response to the §2255 motion on August 2, 2021.  *See* ECF No. 84.  Porter filed his reply on November 28, 2022.  ECF No. 86.  The issues are now sufficiently joined, and the Court sets forth its analysis below.

### III.   DISCUSSION

#### A.   Motion for Leave to Proceed In Forma Pauperis

Initially, we turn to Porter's motion for leave to proceed *in forma pauperis* in this proceeding.  ECF No. [77].  No filing fee is required of a movant who seeks relief under 28 U.S.C. §2255.  *See* Rules Governing § 2255 Cases, Rule 3 advisory committee's note (1976).  "Courts consider applications to proceed *in forma pauperis* when necessary to 'allow quicker disposition' of §2255 motions by enabling the judge to 'appoint counsel, order the government to pay witness fees, allow docketing of an appeal, and grant any other rights to which an indigent is entitled in the course of a § 2255 motion . . . .'"  *United States v. Sample*, No. CR 18-31, 2021 WL 230983, at *2 (W.D. Pa. Jan. 22, 2021) (quoting *United States v. Nelson*, No. 1:09-CR-00211, 2013 WL 6506747, at *4 (M.D. Pa. Dec. 12, 2013)), *certificate of appealability denied*, No. CV 21-1437, 2021 WL 4056283 (3d Cir. Sept. 1, 2021).  Because none of those actions are necessary in this case, Porter's motion to proceed *in forma pauperis* will be dismissed as moot.

#### B.   Motion for Appointment of Counsel

We next address Porter's motion for appointment of counsel.  ECF No. [78].  There is no Sixth Amendment right to counsel in a §2255 proceeding.  *See* LCvR 2255(M); *United States v. Kelly*, Criminal No. 08-374-12, 2022 WL 4104238, at *4 (W.D. Pa. Sept. 8, 2022).  "Financially

eligible movants may, however, request that counsel be appointed at any time." LCvR 2255(M)

(citing 18 U.S.C. §3006A). "If necessary for effective discovery, the judge must appoint an

attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."

Rules Governing §2255 Cases, Rule 6; *see also* LCvR 2255(M). In addition, "[i]f an evidentiary

hearing is warranted, the judge must appoint an attorney to represent a moving party who

qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rules Governing §2255 Cases,

Rule 8; *see also* LCvR 2255(M). Under 18 U.S.C. §3006A(a)(2)(B), counsel may be appointed

for financially eligible petitioners where "the court determines that the interests of justice so

require . . . ." In making this determination, a court must decide "if [the] petitioner has presented

a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court."

*Kelly*, 2022 WL 4104238, at *4 (quoting *McAdams v. United States*, No. 09-737-001, 2016 WL

240877, at *6 (D.N.J. Jan. 20, 2016)).

Here, the Court concludes that appointment of counsel will not benefit Porter or the

Court. For the reasons discussed below, neither discovery nor an evidentiary hearing are

warranted in this case, as it is evident from the current record that Porter's claims lack merit.

Accordingly, his request for counsel will be denied.

### C. Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255

Finally, the Court will address the merits of Porter's §2255 motion. Under 28 U.S.C.

§2255, a federal prisoner in custody may move the court which imposed the sentence to vacate,

set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of

the Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

7

otherwise subject to collateral attack." 28 U.S.C. § 2255. Courts should liberally construe *pro se*

motions under 28 U.S.C. §2255. *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir.

2010). A district court is required to hold an evidentiary hearing on a § 2255 motion if the files

and records of the case are inconclusive as to whether the movant is entitled to relief. *United*

*States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). "[T]he court must accept the truth of the

movant's factual allegations unless they are clearly frivolous on the basis of the existing record."

*Id.* at 545 (internal quotation marks and citation omitted).

      For the reasons set forth below, it is clear from the file and records in this case that Porter

is not entitled to relief under §2255. Therefore, no evidentiary hearing is required.

### 1. Ineffectiveness-of-Counsel Claim

      Porter first claims that his attorney, Phillip Friedman, rendered ineffective assistance in

connection with his change of plea, sentencing, and direct appeal. With respect to his guilty

plea, Porter states that Mr. Friedman "agreed to a plea deal before going over it with [him] or

even meeting [with him] to talk about the case." ECF No. 76 at 4. With respect to his

sentencing, Porter states that he "had objections to things in the [presentence investigation

report] which [his] attorney knew [of] and did nothing about." *Id.* Finally, Porter alleges that,

after filing his *pro se* notice of appeal, his attorney "did not tell [him] for three months that he

was appointed," by which time "it was too late to submit anything on [his] own behalf," resulting

in Porter's "lost . . . opportunity to pursue a direct appeal." *Id.*

      To establish an ineffective-assistance-of-counsel claim in violation the Sixth

Amendment, a defendant must demonstrate that (1) counsel's performance was deficient; and (2)

counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668,

8

687 (1984).  To establish deficient performance, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689-90 (internal quotation marks omitted).  Accordingly, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-691.

To establish prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probably is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).  More specifically, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  To demonstrate prejudice in the context of sentencing proceedings, the petitioner must establish a reasonable probability that, but for counsel's ineffectiveness, the court would have imposed a shorter sentence.  *See United States v. Smack*, 347 F.3d 533, 540 (3d Cir. 2003) ("The reasonable probability of any decrease in Smack's sentence would establish prejudice.") (citing *Glover v. United States*, 531 U.S. 198 (2001)); *see also Lafler*, 566 U.S. at 165 (noting that "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because any amount of [additional] jail time

9

has Sixth Amendment significance") (internal quotation marks and citation omitted). Here, Porter cannot establish a violation of his Sixth Amendment rights, based on the files and records of this case.

(i)

Porter's first claim is that Mr. Friedman was ineffective in that he improperly "agreed to" the plea agreement before going over it with Porter or even meeting with him. This line of argument is unavailing. Under Rule 11(c), "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement." Fed. R. Crim. P. 11(c)(1). This includes situations where, as here, the plea agreement specifies that the defendant will plead guilty to certain charges and the prosecuting attorney will move to dismiss other charges. Fed. R. Crim. P. 11(c)(1)(A). Of course, any plea deal negotiated by Mr. Friedman was not binding in itself and would necessarily require Porter's agreement as well as this Court's approval. Moreover, the Court could only accept Porter's guilty plea to Counts 1 and 5 after verifying that: (i) there was a factual basis for those charge, (ii) Porter was competent to enter a guilty plea; and (iii) Porter's guilty plea and acceptance of the plea agreement was voluntary and supported by an understanding of the constitutional rights that Porter would be waiving by pleading guilty. *See* Fed. R. Crim. P. 11(b)(1), (2), and (3). Principles of due process demand no less. *See United States v. Doumbia*, No. 3:20-CR-08, 2022 WL 2657215, at *6 (W.D. Pa. July 8, 2022) ("'Due process requires that a guilty plea be voluntary, that is, that a defendant be advised of and understand the direct consequences of a plea.'") (quoting *United States v. Salmon,* 944 F.2d 1106, 1130 (3d Cir. 1991), *abrogated on other grounds by United States v. Caraballo-Rodriguez,* 726 F.3d 418 (3d Cir. 2013)).

Here, the Court's colloquy was more than adequate to satisfy the requirements of due process and Rule 11(b).  In questioning defense counsel, the Court determined that Mr. Friedman had had an adequate opportunity to meet with Porter and discuss the plea agreement with him and that Mr. Friedman had no concerns about Porter's competency to enter a guilty plea.  *See* ECF No. 72 at 4:5-10.  In questioning the prosecuting attorney, the Court was able to discern that the Government had no concerns about Porter's competency and that there was a factual basis for Porter's guilty plea to Counts 1 and 5.  *Id.* at 4:17-19, 25:15-31:9.  After placing Porter under oath, the Court determined that Porter:

- was not under the influence of any substance or suffering from any impairment that might affect his ability to understand the proceedings, *see* ECF No. 72 at 3:12-4:4;

- had had an adequate opportunity to confer with his attorney and was satisfied with Mr. Friedman's representation, *id.* at 4:11-16, 32:9-18;

- understood the various rights he would waiving by pleading guilty instead of proceeding to trial, as well as the collateral consequences of a guilty plea, *id.* at 4:20-9:14;

- understood the nature of the crimes to which he was pleading guilty, including the necessary elements that the Government would otherwise have to prove at trial, *id.* at 9:15-13:15;

- understood the maximum and mandatory minimum periods of incarceration he was facing on those charges, as well as the possible fines, terms of supervised release, special assessments, restitution, and forfeiture penalties, *id.* at 13:16-15:25;

- understood the terms of his plea agreement, including the limitations that the agreement would impose on Porter's right to take a direct appeal and collaterally attack his conviction and sentence, *id.* at 16:1-21:19;

- understood the Court's obligation to calculate the applicable sentencing guidelines range and to consider that range, as well as any possible departures under the sentencing guidelines and the factors set forth in 18 U.S.C. §3553(a), *id.* at 22:8-24:10;

- understood that he would be bound by his guilty plea even if the Court's sentence was harsher than he anticipated, *id.* at 24:11-15;

11

- agreed with the Government's factual recitation of the evidence supporting the guilty plea and admitted the conduct attributed to him, *id.* at 31:10-32:5, 32:19-33:4;

- was knowingly and voluntarily pleading guilty to Counts 1 and 5 and had been neither forced or threatened to do so, nor induced by any promises other than those in the plea agreement, *id.* at 18:18-19:3, 20:19-21:19, 25:4-14, 33:5-25.

In short, any claim that Porter was tricked or coerced into pleading guilty and/or accepting the terms of his plea agreement is untenable. The Court perceives nothing about Mr. Friedman's plea negotiations that was improper, nor has Porter articulated other grounds that would demonstrate ineffectiveness on Mr. Friedman's part.

Additionally, Porter has not established prejudice resulting from Mr. Friedman's conduct. Here, Porter has not alleged, much less demonstrated that, but for his attorney's conduct, he would not have pled guilty and instead would have proceeded to trial. Based on the record before the Court, Porter had no obvious incentive for rejecting the Government's plea offer, and nowhere does he suggest that he possessed leverage to obtain a better plea deal. On the contrary, the evidence against him was compelling and did not give rise to any obvious defenses. Moreover, the charges that were dismissed by the Government carried hefty penalties: Counts 2, 3, 4, and 6 each involved minimum sentences of at least 15 years of imprisonment, *see* 18 U.S.C.A §2251(a) and (e)), while Counts 7 and 8 each involved minimum sentences of 5 years of imprisonment, *see* 18 U.S.C.A. §2252(a)(2) and (b)(1). *See also* ECF 25. Consequently, Porter has failed on both prongs of his ineffective-assistance-of-counsel claims as it relates to his guilty plea.

(ii)

Porter next claims that Mr. Friedman was ineffective in that he failed to take an action concerning "things in the [presentence investigative report]" that Porter "objected to . . . ." ECF

12

No. 76 at 4.  Porter elaborates in his reply brief that he never received a "complete" copy of the presentence investigative report ("PSR"), having been provided only what the probation office and Mr. Friedman submitted, but not what the Government submitted.  ECF No. 86 at 1.  A review of the record shows that the Government did not file any objections to the probation officer's PSR but did file a sentencing memorandum in opposition to Porter's request for a downward variance.  *See* ECF No. 61.  Porter goes on to state that he objected to the probation officer's descriptions in the PSR of certain pornographic videos which, in Porter's view, "embellish[ed] the acts taking place." ECF No. 86 at 2.  Porter apparently believed these video descriptions "could lead to increase aggravating factors" but claims that Mr. Friedman "failed to voice these objections for me." *Id.*  No further elaboration is provided by Porter concerning the specific content that he found objectionable in the Government's sentencing memorandum or the probation officer's description of video content.

Based on the record as it currently exists, Porter's Sixth Amendment claims plainly lack merit.  First, Porter's professed objection to the probation officer's description of certain unspecified videos is belied by the fact that Porter exercised his right of allocution at the time of his sentencing but failed to raise any objection to the PSR at that time, even though Porter admittedly had access to the PSR and reviewed it with Mr. Friedman prior to his sentencing.

As for Porter's suggestion that Mr. Friedman failed to provide him a copy of the Government's sentencing memorandum, there is no reasonable likelihood that the Court would have imposed a shorter sentence if Porter had voiced his (unspecified) objections to the Government's sentencing position.  It bears reiterating that the charges to which Porter pled guilty were extremely serious, each carrying mandatory minimum sentences of 15 years' incarceration and a statutory maximum of 30 years' incarceration.  Furthermore, the conduct for

which Porter accepted responsibility in connection his plea agreement was particularly heinous. Although the Government requested a sentence in excess of the 360-month sentencing guidelines range, the Court ultimately denied that request and imposed an aggregate sentence of 276 months' incarceration, well below the suggested guidelines range. The simple reality is that, given the nature of his crimes, Porter was not likely to receive a shorter sentence even if he had voiced the objections sets forth in his §2255 motion.

Porter also states in his reply brief that he requested a psychiatric evaluation but met with the evaluating psychologist, Steven J. Reilly, only one time. Porter believes that, if he had met with Mr. Reilly more than once, the latter "would have been able to give a more detailed report about what [Porter] was going through," and this in turn "could have [revealed] mitigating factors which could have led to a lesser sentence." ECF No. 86 at 2. Porter states that he informed Mr. Friedman of his disappointment with the lack of details in Mr. Reilly's report but got no response. *Id.*

Giving due consideration to these allegations, the Court finds no grounds to conclude that Mr. Friedman was ineffective for failing to pursue a more detailed psychological evaluation. On balance, Mr. Reilly's evaluation was favorable to Porter, *to wit*: he found that Porter exhibited "few antisocial tendencies," was "forthright, sincere and regretful regarding his pending offenses," did not blame others for his circumstances, and would benefit from "low intensity sex offender programming," which could be managed over the course of 8 to 14 months "through short term incarceration as well as extensive community intervention." ECF No. 60-1 at 4. While Porter suggests that a more thorough examination might have uncovered "mitigating factors," he offers nothing more than speculation in this regard despite being the person best positioned to articulate what those mitigating factors might be. The record here forecloses any

14

finding that Mr. Friedman's representation at the sentencing was deficient, or that it somehow prejudiced Porter.

(iii)

Finally, Porter claims that Mr. Friedman was ineffective during the appellate proceedings in that Mr. Friedman did not advise Porter that he had been appointed to represent him until it was too late for Porter to file a brief on his own behalf, thereby depriving Porter of an opportunity to pursue a direct appeal. Relatedly, Porter asserts in his reply brief that his appeal was denied because he "was unable to submit anything," having had no help from his attorney. ECF No. 86 at 3.

Once again, the record in this case forecloses any viable Sixth Amendment claim based on Mr. Friedman's alleged conduct as it relates to Porter's direct appeal. Notably, Porter does not identify any particular issue that he believes he could have successfully pursued on appeal. To the extent Porter would have asserted Mr. Friedman's ineffectiveness as an appellate issue, he has not been prejudiced by Mr. Friedman's actions in withdrawing his appellate representation, because Porter retained his ability to assert the ineffectiveness claim in these proceedings. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under §2255, whether or not the petitioner could have raised the claim on direct appeal."); *United States v. Payne*, No. CR 18-13, 2022 WL 825438, at *4 n.1 (W.D. Pa. Mar. 18, 2022) ("Defendant's ineffective-assistance-of-counsel claim is not procedurally defaulted on collateral review even though he did not raise it on direct appeal."). And pursuant to the terms of his (enforceable) appellate waiver clause, Porter could not have pursued any other issues on direct appeal, because the Government did not appeal Porter's sentence, the Court's sentence did not exceed the applicable statutory maximums,

15

and the sentence did not unreasonably exceed the applicable guidelines range.  Accordingly, the record in this case does not support a finding that Mr. Friedman acted unreasonably during the direct appeal proceedings, nor does it support a finding that Porter was prejudiced by the alleged ineffectiveness.[5]

### 2.  Prosecutorial Misconduct Claim

Porter also bases his §2255 motion on claims of prosecutorial misconduct, which he believes tainted his sentencing proceedings.  Specifically, Porter claims that the Assistant U.S. Attorney made false assertions at the sentencing about his alleged possession of a "collection of photos" which Porter denies having access to or ever seeing.  Porter further states in his reply brief that the prosecuting attorney wrongfully accused him of "grooming" one of his child victims when, according to Porter, he was "almost never alone with her."  ECF No. 86 at 4. Finally, Porter objects that the prosecutor "questioned" the reliability of his psychiatric evaluation on the basis of the doctor's limited contact with Porter and the fact that Porter "was only given one test and not others."  *Id.* More generally, Porter accuses the Government of "just mak[ing] stuff up to try and get a longer sentence."  *Id.*

This line of argument is unavailing because Porter's claims of prosecutorial misconduct are barred by the "collateral-attack" waiver clause in his plea agreement. As discussed, Porter's waiver broadly covered a "direct appeal from his conviction or sentence," "a motion to vacate

---

[5] Elsewhere in his reply brief, Porter asserts that Mr. Friedman should not have been appointed as his appellate attorney in the first place, since Porter was restricted by his plea agreement to asserting ineffectiveness-of-counsel claims.  Porter also makes a passing objection that the Government failed to respond to his direct appeal.  Neither of these points implicate Mr. Friedman's conduct; therefore, they cannot serve as a basis for a valid Sixth Amendment ineffectiveness-of-counsel claim.

16

sentence under 28 U.S.C. §2255, attacking his conviction or sentence," and "any other collateral proceeding attacking his conviction or sentence," subject to certain limited exceptions that are not implicated by the alleged prosecutorial misconduct. *See* ECF No. 49-1, ¶12. Porter's assertions of prosecutorial misconduct in connection with his sentencing plainly fall within the scope of matters waived.

The U.S. Court of Appeals for the Third Circuit has held that appellate or collateral-attack waivers are valid when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice. *See United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015). To determine whether such a waiver would work a "miscarriage of justice," courts consider

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Fazio*, 795 F.3d at 426 (quoting *United States v. Erwin*, 765 F.3d 219 226 (3d Cir. 2014)).

Here, the record readily establishes that Porter's waiver of post-sentencing rights was done knowingly and voluntarily. During the change of plea hearing, both the prosecuting attorney and the Court explained the nature of the waiver clause to Porter, and Porter indicated that he understood its terms. *See* ECF No. 72 at 17:1-14, 19:4-20:18. In addition, the written plea agreement that contained the waiver clause was introduced into evidence. *Id.* at 16:1-10. Porter acknowledged that he had read the plea agreement, reviewed it with his attorney, understood its terms, and had signed the agreement of his own free will. *Id.* at 18:18-19:3, 20:24-21:9. During the Court's colloquy, Porter represented that he had had sufficient time to confer with his attorney about the case and the rights he was giving up by pleading guilty. *Id.* at

4:11-13, 32:9-18.  He denied having been coerced into pleading guilty or having been induced by any promises aside from the conditions of the plea agreement itself.  *Id.* at 21:10-19; 25:4-14. Thus, Porter's waiver of his appellate and collateral-attack rights was knowing, voluntary, and valid.

The Court also concludes that enforcement of the collateral-attack waiver would not work a miscarriage of justice in this case.  Notably, Porter has not made any claim -- much less an evidentiary proffer -- of actual innocence.  He has not pointed, for example, to any new and relevant evidence to show that he did not commit the offenses to which he pled guilty.  On the contrary, the evidence against Porter as outlined by the Government at the plea hearing was compelling.  While under oath, Porter fully acknowledged the accuracy of the Government's proffer, his own complicity in the conduct alleged, and his guilt relative to Counts 1 and 5 of the Superseding Indictment.  Even if Porter's assertions about the prosecutor's alleged misconduct are taken at face-value, the Court is satisfied that no miscarriage of justice will result from enforcement of his collateral-attack waiver.  To reiterate, Porter freely an openly acknowledged his guilt on the charges for which he was sentenced.  Porter faced a maximum sentence of up to 60 years in prison.  As discussed, this Court imposed an aggregate sentence of 23 years' imprisonment, well below what the Government sought.  In imposing its sentence, this Court did not cite any of the alleged misstatements that form the basis of Porter's prosecutorial misconduct claim.  Thus, the alleged prosecutorial misconduct -- even if proven [6] -- had no appreciable bearing on Porter's sentence.  No miscarriage of justice will result from the Court's enforcement of Porter's waiver of his §2255 rights.

---

[6] The Court makes no finding in this regard.

D. *Certificate of Appealability*

Pursuant to 28 U.S.C. § 2253(c)(2), this Court may issue a certificate of appealability

only if "the applicant has made a substantial showing of the denial of a constitutional right."

"Where a district court has rejected the constitutional claims on the merits, the showing required

to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 474, 484 (2000). Where the court dismisses a §2255 petition based

on procedural grounds, the petitioner must also show that "jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Id.*

Here, jurists of reason would not debate the Court's finding that Porter's ineffectiveness-

of-counsel claims lack merit. Therefore, Porter has not made a substantial showing that his Sixth

Amendment right to effective assistance of counsel was denied. Porter also has not shown that

reasonable jurists would debate the Court's determination that the collateral-attack waiver in his

plea agreement was entered into "knowingly and voluntarily." *See United States v. Fazio*, 795

F.3d 421, 425 (3d Cir. 2015). Nor would jurists of reason debate that enforcement of Porter's

collateral-attack waiver will not work a miscarriage of justice. For all of these reasons, no

certificate of appealability shall issue.

## IV.   CONCLUSION

For the foregoing reasons, the files and records in this case conclusively demonstrate that

Porter is not entitled to relief under 28 U.S.C §2255. Accordingly, there is no basis for an

evidentiary hearing on his claims. Porter's §2255 motion will be denied. His motions for leave

to proceed *in forma pauperis* and for appointment of counsel will be dismissed as moot. Finally,

the Court will decline to issue a certificate of appealability because jurists of reason would not

find it debatable that Porter has failed to make a substantial showing of a violation of his Sixth

Amendment rights.  Additionally, jurists of reason would not find it debatable that Porter's

prosecutorial misconduct claims are barred by the collateral-attack waiver in his plea agreement.

     An appropriate order follows.


Date: December 22, 2022.

                                    Susan Paradise Baxter
                                    United States District Judge